UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY and
CHARLIE SAVAGE,

                              Plaintiffs,

                v.                                                    No.  25-cv-562-GHW

UNITED STATES DEPARTMENT OF JUSTICE,

                              Defendant.


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

David E. McCraw
Al-Amyn Sumar
Timothy Tai
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-4634
mccraw@nytimes.com
al-amyn.sumar@nytimes.com
timothy.tai@nytimes.com

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 6

    I.    The Florida Court's Injunction Does Not Provide a Basis for Dismissal of the
         Complaint.............................................................................................................. 7

        A.    The Injunction Is a Nullity Because the District Court Lacked Jurisdiction .............. 7

        B.    The Speculative Possibility of Conflicting Injunctions Is Not a Basis for
            Dismissal................................................................................................................. 13

    II.    Unresolved Issues Make Summary Judgment Improper at This Time ............................. 23

CONCLUSION......................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases** **Page(s)**

*Abrego Garcia v. Noem,*
No. 25-1404, 2025 U.S. App. LEXIS 9237 (4th Cir. Apr. 17, 2025) .......................................22

*Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195 (11th Cir. 2009) .......................................7, 13

*Am. Oversight v. U.S. Dep't of Just.,*
No. 25-cv-383, 2025 U.S. Dist. LEXIS 76497 (D.D.C. Apr. 22, 2025)...................................12

*Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182 (D.D.C. 2019)..................................16

*Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274 (2d Cir. 2009).......................................6

*Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305 (4th Cir. 2001)................................8

*Brennan Ctr. for Justice at NYU Sch. of Law v. Dep't of Com.,*
498 F. Supp. 3d 87 (D.D.C. 2020)........................................................................................16

*Brougham v. Oceanic Steam Navigation Co.*, 205 F. 857 (2d Cir. 1913) ...................................11

*Califano v. Yamasaki*, 442 U.S. 682 (1979)................................................................................19

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)..................................................................8, 12, 13

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.,*
846 F.3d 1235 (D.C. Cir. 2017)..........................................................................................21

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) ...........................................................................9

*Collins v. Foreman*, 729 F.2d 108 (2d Cir. 1984) ......................................................................12

*Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730 (2d Cir. 1980)........................................12

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) .......................................................................6

*Dever v. Kelly*, 348 F. App'x 107 (6th Cir. 2009) ......................................................................11

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518 (D.C. Cir. 2015)................6

*Familias Unidas por la Justicia v. U.S. Dep't of Lab.,*
No. 24-cv-637, 2025 U.S. Dist. LEXIS 61520 (W.D. Wash. Mar. 28, 2025) .......................15

*FDIC v. Cortez,*
No. 93-cv-6696, 1995 U.S. Dist. LEXIS 19590 (S.D.N.Y. Aug. 9, 1995).............................9

*Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402 (2d Cir. 1997)...................................19

*Gill v. Whitford*, 585 U.S. 48 (2018)................................................................................................19

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982).................................................9, 10

*GTE Sylvania v. Consumers Union of the United States, Inc.*,
    445 U.S. 375 (1980).......................................................................................................7, 17

*Holland v. Apfel*, 23 F. Supp. 2d 21 (D.D.C. 1998) ......................................................................22

*Illinois ex rel. Ill. Dep't of Pub. Aid v. U.S. Dep't of Health & Hum. Servs.*,
    594 F. Supp. 147 (N.D. Ill. 1984)......................................................................................9

*In re Abbott*, 956 F.3d 696 (5th Cir. 2020)....................................................................................19

*In re Establishment Inspection of Hern Iron Works*, 881 F.2d 722 (9th Cir. 1989) ....................11

*In re Franklin Nat'l Bank Sec. Litig.*, 92 F.R.D. 468 (E.D.N.Y. 1981),
    *aff'd sub nom. FDIC v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982).......................20

*In re Novak*, 932 F.2d 1397 (11th Cir. 1991) ...............................................................................11

*In re Sawyer*, 124 U.S. 200 (1888) .................................................................................................8

*In re Soundview Elite, Ltd.*,
    No. 15-cv-5666, 2016 U.S. Dist. LEXIS 38494 (S.D.N.Y. Mar. 23, 2016) ..................8

*Kansas v. Nebraska*, 574 U.S. 445 (2015)....................................................................................21

*Kentucky v. Biden*, 57 F.4th 545 (6th Cir. 2023) ..........................................................................19

*Leadsinger, Inc. v. Cole*,
    No. 05-cv-5606, 2006 U.S. Dist. LEXIS 55550 (S.D.N.Y. Aug. 4, 2006)....................9

*Lykins v. U.S. Dep't of Just.*, 725 F.2d 1455 (D.C. Cir. 1984) ...................................................8, 9

*Martin v. Wilks*, 490 U.S. 755 (1989) ...........................................................................................15

*McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007) ..........................................................................12

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
    112 F.4th 144 (2d Cir. 2024)..............................................................................................3

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011) ...............................................................................6

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ............................................................................6

*Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218 (4th Cir. 1999).....................................13

*Motorola Credit Corp. v. Uzan*,
    No. 02-cv-666, 2002 U.S. Dist. LEXIS 15650 (S.D.N.Y. Aug. 22, 2002)...................20

*Murthy v. Missouri*, 603 U.S. 43 (2024) ...............................................................................19

*NAACP v. McLaughlin*, 703 F. Supp. 1014 (D.D.C. 1989) ...................................................22

*Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) .................................................................22

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ...........................................18

*Payne Enters. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ..........................................21

*Pratt v. Ventas, Inc.*, 365 F.3d 514 (6th Cir. 2004) ...........................................................8, 12

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ................................................14

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974 ......................................21

*Robertson v. Dep't of Defense*, 402 F. Supp. 1342 (D.D.C. 1975) .......................................22

*Schoenberg v. FBI*,
    No. 18-cv-1738, 2020 U.S. Dist. LEXIS 155329 (C.D. Cal. May 8, 2020) ....................17

*Seife v. U.S. Food & Drug Admin.*, 43 F.4th 231 (2d Cir. 2022) ............................................6

*Simmons v. Trans Express Inc.*, 16 F.4th 357 (2d Cir. 2021) .................................................3

*Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220 (2d Cir. 2004) ...............................................9

*Texas v. United States*, 328 F. Supp. 3d 662 (S.D. Tex. 2018) ............................................23

*Trump v. CASA, Inc.*, 606 U.S. __, No. 24A884, slip op. (June. 27, 2025) ..........................19

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) ....................................................................6

*United States v. Holland*, 552 F.2d 667 (5th Cir. 1977) ........................................................8

*United States v. Nauta*, 764 F. Supp. 3d 1212 (S.D. Fla. 2025) ..............................4, 10, 18

*United States v. Nauta*,
    No. 23-cr-80101, 2025 U.S. Dist. LEXIS 5705 (S.D. Fla. Jan. 7, 2025) .........................4

*United States v. Revie*, 834 F.2d 1198 (5th Cir. 1987) ........................................................11

*United States v. Trump ("Trump I")*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ........................3

United States v. Trump ("*Trump I*"), No. 23-cr-80101 (S.D. Fla.) ...................................passim

*United States v. Trump ("Trump II")*, No. 24-12311 (11th Cir.) .....................................3, 4, 10

*United States v. Walker*,
    No. 94-cr-32S, 1994 U.S. Dist. LEXIS 19701 (W.D.N.Y. Dec. 21, 1994) ....................11

*Walker v. Birmingham*, 388 U.S. 307 (1967) ................................................................................ 11

*Wyoming v. U.S. Dep't of Agric.*, 570 F. Supp. 2d 1309 (D. Wyo. 2008) .................................... 15

## STATUTES

28 C.F.R. § 50.9 ........................................................................................................................... 18

28 C.F.R. § 600.1 *et seq.* ................................................................................................................. 3

28 C.F.R. § 600.8(c) ................................................................................................................. 2, 10

28 C.F.R. § 600.9(c) ................................................................................................................. 3, 10

5 U.S.C. § 552(a)(4)(B) ................................................................................................. 6, 14, 20, 21

Plaintiffs The New York Times Company and Charlie Savage (jointly, "The Times") respectfully submit this memorandum of law in opposition to the motion of Defendant, the U.S. Department of Justice ("DOJ"), to dismiss the complaint or, alternatively, for summary judgment ("DOJ Br.").

## PRELIMINARY STATEMENT

At issue here is a single document: a report ("Volume II") from DOJ Special Counsel Jack Smith concerning the criminal charges that DOJ brought against Donald J. Trump and two co-defendants for mishandling classified documents. DOJ has denied The Times's request for the report under the Freedom of Information Act ("FOIA") on the grounds that an injunction issued in the now-concluded criminal action against Mr. Trump and his co-defendants in the Southern District of Florida prohibits the release of Volume II. If that were all there was to this case— as DOJ suggests in its motion papers—this would be an easy case. But there is more, much more. This case in fact raises novel and important questions about the operation of FOIA and an agency's legal obligation to assure required public transparency in government records. Specifically at issue is whether DOJ can thwart the public's rights under FOIA by relying on, and in fact endorsing, an injunction that was issued by a court lacking jurisdiction—even after the fair-trial rationale for the injunction has now disappeared and after DOJ during the Biden administration declared that an earlier version of the same injunction was procedurally improper. DOJ seeks the blessing of this Court to throw up its hands and say there is nothing it can do to protect the public's rights under FOIA even though DOJ's own actions and inactions have helped cause the loss of those rights.

DOJ's reliance on the injunction is fatally flawed in two regards. *First*, the federal court in Florida did not have jurisdiction to enter the injunction. As a result, the injunction is a nullity for purposes of determining whether The Times is entitled to Volume II under FOIA. *Second*, DOJ has taken no steps in the Southern District of Florida to seek a limitation or dissolution of the injunction

so that the public's rights under FOIA are preserved. To the contrary, DOJ has endorsed the injunction in a Joint Status Report to the Florida court despite the end of the criminal prosecution—and therefore the end of any need for the injunction to protect fair trial rights. FOIA dictates that agency records are public unless one of the enumerated exemptions applies. DOJ cannot dodge its responsibilities to the public by acquiescing to an improper and invalid injunction that impedes the public transparency required by FOIA.

The motion to dismiss should be denied, as should the alternative motion for summary judgment, and DOJ should be required to complete processing of The Times's FOIA request, including moving the court in the Southern District of Florida to end or modify the injunction in light of DOJ's FOIA obligations.

## STATEMENT OF FACTS

On January 7, 2025, Special Counsel Jack Smith delivered his final report to Attorney General Merrick Garland. Amended Complaint, ECF No. 18 ("Compl.") ¶ 9. The report has two volumes addressing DOJ's investigation into Mr. Trump: the first related to his efforts to overturn the 2020 election and the second regarding his mishandling of classified documents. Compl. ¶ 10. The former volume has since been publicly released, but Volume II has never been disclosed. Compl. ¶ 11. The two volumes were drafted and delivered to the Attorney General pursuant to 28 C.F.R. § 600.8(c), the regulations governing appointment of special counsel, which direct that a concluding report be delivered to the Attorney General. *See* Letter from Jack Smith, Special Counsel, to Merrick Garland, Attorney General (Jan. 7, 2025), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf. Under 28 C.F.R. § 600.9(c), the Attorney General has the discretion to make the report public.

When the report was delivered to the Attorney General, the criminal action related to the classified documents remained pending at the Eleventh Circuit as to the two co-defendants

following an appeal by DOJ. Judge Aileen Cannon of the Southern District of Florida had earlier

dismissed the complaint against Mr. Trump and his co-defendants on July 15, 2024. *United States*

*v. Trump* ("*Trump I*"), 740 F. Supp. 3d 1245, 1309 (S.D. Fla. 2024). The court reasoned that Mr.

Smith's appointment was unconstitutional because the special counsel regulations, 28 C.F.R.

§ 600.1 *et seq.*, which the Attorney General had relied upon to appoint Mr. Smith, usurped power

that constitutionally resided only with Congress. *Trump I*, 740 F. Supp. 3d at 1303. As a result, the

court held, the prosecution was void. *Id.* DOJ filed its appeal of that dismissal on July 17, 2024,

divesting the district court of jurisdiction. *Trump I*, No. 23-cr-80101 (S.D. Fla.), Dkt. 673; *United*

*States v. Trump* ("*Trump II*"), No. 24-12311 (11th Cir. July 18, 2024), Dkt. 1-1.[1]

The charges against Mr. Trump were subsequently dropped on November 26, 2024 upon

his election as president, *Trump I*, Dkt. 677, but DOJ's appeal remained pending as to the co-

defendants at the time Mr. Smith delivered the two volumes to Mr. Garland. Concerned that Mr.

Garland would release Volume II under the provisions of 28 C.F.R. § 600.9(c), the co-defendants,

initially via emergency motions, asked both Judge Cannon and the Eleventh Circuit to enjoin the

release of the report, asserting that their fair trial rights would be prejudiced by publicity about it.

*See Trump I*, Dkt. 679;[2] *Trump II*, Dkt. 85. DOJ opposed those motions, saying the issuance of an

injunction was unnecessary because DOJ did not intend to publicly release Volume II until the

criminal proceedings against the co-defendants concluded. *See Trump I,* Dkt. 703 at 2–3; *Trump*

*II*, Dkt. 90, at 10. Even though DOJ's appeal remained pending, Judge Cannon nonetheless issued

---

[1] It is proper for this Court, on a motion to dismiss, to take judicial notice of the contents of—and positions taken by the parties in—the filings in the *Trump* prosecution and appeal. *See, e.g.*, *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024); *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021).

[2] The docket in *Trump I*, No. 23-cr-80101 (S.D. Fla.) appears to be incomplete and this document along with the filings associated with Dkt. 689 no longer appear to be publicly available. If this Court is unable to obtain copies of these documents, The Times will submit them for review at the Court's convenience.

an injunction on January 7 that was to remain in place until three days after the Eleventh Circuit resolved the parallel motion before it. *See United States v. Nauta*, No. 23-cr-80101, 2025 U.S. Dist. LEXIS 5705, at *3 (S.D. Fla. Jan. 7, 2025). On January 9, the Eleventh Circuit summarily denied that motion and invited the Government to file a notice of appeal if it sought relief from Judge Cannon's injunction. *Trump II*, Dkt. 100. The Government immediately did so. *Trump I*, Dkt. 686.

Despite the Government's appeal, on January 10, 2025, the co-defendants asked Judge Cannon to extend her initial injunction until either she or the Eleventh Circuit decided whether injunctive relief was actually warranted. *Trump I*, Dkt. 689 at 1. Judge Cannon granted the request on January 13, enjoining the release of Volume II until she could decide the co-defendants' emergency motion on the merits. *United States v. Nauta*, 764 F. Supp. 3d 1212, 1215-16 (S.D. Fla. 2025).[3]

Subsequently, on January 21, still without the requisite jurisdiction as a result of the pending appeal, Judge Cannon granted the motion and issued a new injunction—the one at issue in this proceeding—enjoining the release of Volume II indefinitely. *United States v. Nauta*, 764 F. Supp. 3d 1216 (S.D. Fla. 2025). The injunction stated:

> Attorney General Garland or his successor(s), the Department of Justice, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals, are enjoined from (a) releasing, sharing, or transmitting Volume II of the Final Report or any drafts of Volume II outside the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in Volume II or in drafts thereof.

*Id.* at 1225.

---

[3] This motion practice also involved Volume I, which concerned the special counsel's prosecution of Mr. Trump for trying to subvert the results of the 2020 election. Because it was unrelated to the Florida proceedings, it was released as a result of an order from Judge Cannon on January 14. *See* Alan Feuer & Charlie Savage, *Special Counsel Report Says Trump Would Have Been Convicted in Election Case*, N.Y. TIMES (Jan. 14, 2025), https://www.nytimes.com/2025/01/14/us/politics/trump-special-counsel-report-election-jan-6.html.

On February 11, DOJ dismissed the complaint as to the two co-defendants, bringing an end to the prosecution. *Trump I*, Dkt. 716. No further criminal proceedings against the two co-defendants are pending.

On March 14, pursuant to Judge Cannon's order, DOJ and the two co-defendants filed a Joint Status Report. *Trump I*, Dkt. 738. DOJ's new position was extraordinary. Though it had earlier asserted that Volume II needed to remain secret only so long as criminal proceedings against the two co-defendants were pending, it abandoned that position in the Joint Status Report. DOJ simply ignored the fact that any concerns about tainting a potential jury had disappeared with the dismissal of the case, and it chose not to acknowledge that release of the document should now be governed by FOIA following the termination of the criminal proceeding. Instead, DOJ eagerly acquiesced to the sealing of a document that is presumptively public under FOIA. The department wrote:

> The United States does not object to the Court keeping its order enjoining the Attorney General of the United States and the Department of Justice from releasing Volume II outside the Department of Justice, or sharing any information contained in Volume II with anyone outside the Department of Justice, in place. The United States understands and appreciates the arguments made by Waltine Nauta and Carlos De Oliveira regarding the prejudice they would suffer if Volume II were to be released.

*Id.*

Significantly, at the time of the Joint Status Report, The Times's FOIA litigation in this Court was already pending. The Times had filed its complaint on January 21 seeking expedited consideration of its FOIA request for Volume II, a request that it had filed on January 8. Compl. ¶¶ 23, 26. After DOJ denied the request on February 5 and denied an administrative appeal of that denial on March 11, The Times filed its amended complaint, which is the subject of this motion practice, on April 30. Compl. ¶¶ 28, 31. In response to both the FOIA request and the

administrative appeal, DOJ said it could not release Volume II because of Judge Cannon's injunction. Compl. ¶ 32.

## **ARGUMENT**

The purpose of the Freedom of Information Act is to provide access to government records. *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) ("Congress enacted the FOIA in order to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)) (internal quotation marks omitted)). That presumption of access may be overcome only in certain defined circumstances. "FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)). As a result, FOIA empowers federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

There is a "strong presumption in favor of disclosure [that] places the burden on the agency to justify the withholding of any requested documents." *Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 283 (2d Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). "All doubts are resolved in favor of disclosure." *Seife v. U.S. Food & Drug Admin.*, 43 F.4th 231, 235 (2d Cir. 2022) (citation omitted).

DOJ does not dispute that it has a responsibility under FOIA to release documents unless there is a legal reason excusing DOJ from doing so. It does not meet that responsibility by turning a blind eye to both the law and its obligations to ensure the transparency required by FOIA.

**I.**
**THE FLORIDA COURT'S INJUNCTION**
**DOES NOT PROVIDE A BASIS FOR**
**DISMISSAL OF THE COMPLAINT**

**A.  <u>The Injunction Is a Nullity Because the District Court Lacked Jurisdiction</u>**

DOJ claims that it has no choice but to withhold Volume II because of Judge Cannon's order and cites the Supreme Court's decision in *GTE Sylvania v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 386 (1980), for the proposition that a party must obey a previously issued injunction. *See* DOJ Br. 5–6. As a result, DOJ says, it cannot be found to have "improperly withheld" the document under FOIA. Had *GTE Sylvania* stated such a categorical rule, DOJ would be right, but that is not what the Supreme Court did. *GTE Sylvania* recognized a critical exception to that rule: obeyance is not required—and thus withholding under FOIA is improper—when the court issuing the injunction did not have jurisdiction to issue it.

In *GTE Sylvania*, the Court held that an agency did not "improperly" withhold records when the agency had been enjoined from disclosing them by a district court, and there was "no doubt" that court had jurisdiction to issue such an order. *Id.* at 386. Because of the validly issued injunction, the Court reasoned, there was simply "no discretion for the agency to exercise" in deciding whether to release the records in response to a FOIA request. *Id.* But the specific wording of the Court's holding is important: "Persons subject to an injunctive order *issued by a court with jurisdiction* are expected to obey that decree until it is modified or reversed . . . ." *Id.* (emphasis added).

That jurisdictional language is an essential part of *GTE Sylvania*'s holding. "The Supreme Court did specify in *GTE Sylvania* that the rule of that case is subject to exceptions when the issuing court lacked personal or subject matter jurisdiction . . . ." *Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1204 (11th Cir. 2009). Indeed, when later deciding whether a party

7

could collaterally attack one court's injunction in another court, the Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 306–10 (1995), reaffirmed *GTE Sylvania*'s jurisdictional language and found it necessary to analyze carefully whether the first court had subject-matter jurisdiction to issue its injunction. Only after finding that the first court in fact had such jurisdiction did the Supreme Court reject the collateral attack. *See id.* at 312–13.

While DOJ tries to play the "nothing to see here" card and encourages the Court to spend no time analyzing what it means to "improperly" withhold a document under FOIA, the message from other courts is "not so fast." In the words of the D.C. Circuit, "[t]he inquiry into whether a document is 'improperly' withheld" is directed "at the question whether a court of competent jurisdiction over the subject matter and over the parties has issued a valid injunction." *Lykins v. U.S. Dep't of Just.*, 725 F.2d 1455, 1461 (D.C. Cir. 1984). *Lykins* reflects the longstanding body of law that applies to any injunction whether in a FOIA case or other context. *See, e.g.*, *In re Sawyer*, 124 U.S. 200, 221 (1888) ("The Circuit Court being without jurisdiction to entertain the bill in equity for an injunction, all its proceedings in the exercise of the jurisdiction which it assumed are null and void."); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 520 (6th Cir. 2004) (explaining that "the district court should not have dismissed the Plaintiffs' case under the collateral attack doctrine without first determining that the Delaware bankruptcy court in fact had jurisdiction to enter the Confirmation Order"); *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 399 (4th Cir. 2001) (noting exception to *GTE Sylvania* "if a court lacks jurisdiction over the subject matter of the order"); *In re Soundview Elite, Ltd.*, No. 15-cv-5666, 2016 U.S. Dist. LEXIS 38494, at *27 (S.D.N.Y. Mar. 23, 2016) ("An exception to the collateral bar doctrine exists where the challenged order was transparently invalid or exceeded the issuing court's jurisdiction." (cleaned up)); *United States v. Holland*, 552 F.2d 667, 675 (5th Cir. 1977) (district court's order was void where it lacked

subject-matter jurisdiction to enter it), *vacated on other grounds*, 565 F.2d 383 (5th Cir. 1978) (en banc).[4]

In *Lykins*, a FOIA requester had sought his presentence report from the U.S. Parole Commission. It declined to release it, citing a policy of the federal district court in Virginia that the document was confidential. When the requester then sued under FOIA in the District of Columbia, the district court held that the policy of the Virginia federal court prohibited release and that the judicial policy had to be obeyed under *GTE Sylvania*. The D.C. Circuit reversed, finding that the document had been "improperly withheld" because the Virginia federal court could not "determine the rights of third parties not before it and over whom it has no jurisdiction." *Lykins*, 725 F.2d at 1461. While the factual circumstances of *Lykins* differ from those here, it stands for the proposition that the determination of whether a document is improperly withheld under *GTE Sylvania* necessarily looks at "whether a court of competent jurisdiction over the subject matter and over the parties has issued a valid injunction." *Id*.

The required *Lykins* analysis shows that Judge Cannon had no jurisdiction to issue the injunction on January 21, 2025. The filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004). This "well settled" principle was reaffirmed in *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740–41 (2023) (citing *Griggs* and holding that district

---

[4] *See also, e.g.*, *Illinois ex rel. Ill. Dep't of Pub. Aid v. U.S. Dep't of Health & Hum. Servs.*, 594 F. Supp. 147, 154 (N.D. Ill. 1984) (agency was not bound by injunction from separate federal proceeding where the judge lacked subject-matter jurisdiction over it); *Leadsinger, Inc. v. Cole*, No. 05-cv-5606, 2006 U.S. Dist. LEXIS 55550, at *36–38 (S.D.N.Y. Aug. 4, 2006) (defendant was not bound by temporary restraining order where court lacked personal jurisdiction over him); *FDIC v. Cortez*, No. 93-cv-6696, 1995 U.S. Dist. LEXIS 19590, at *20 (S.D.N.Y. Aug. 9, 1995) ("The Supreme Court has recognized that one who violates an order may contest the validity of that order if the order exceeded the court's jurisdiction . . . .").

court lacked jurisdiction to proceed with action where question of arbitrability was pending appeal). Here, the notice of appeal was filed on July 17, 2024, and the case remained pending at the Eleventh Circuit until February 11, 2025, when DOJ abandoned the prosecution.

While *Griggs*, 459 U.S. at 58, recognizes a narrow exception by which a district court retains residual jurisdiction over collateral matters, there is nothing collateral about the issuance of this injunction. The issue on appeal was whether the appointment of Mr. Smith was constitutional or whether, as Judge Cannon held, the special counsel regulations unconstitutionally usurped congressional power and voided the prosecution of Mr. Trump and his co-defendants. *See, e.g.*, *Nauta*, 764 F. Supp. 3d at 1215 ("All parties agree that Volume II expressly and directly concerns this criminal proceeding."); Br. for the U.S. at 2, 51, *Trump II*, Dkt. 18 (defending constitutionality of special counsel's appointment under 28 C.F.R. part 600); Br. of Appellee President Donald J. Trump at 61–63, *Trump II*, Dkt. 42 (attacking constitutionality of same regulations). It is that very same set of regulations that required Mr. Smith, as a prosecutor appointed under the regulations, to prepare a report and authorized the Attorney General to release it at his discretion. *See* 28 C.F.R. §§ 600.8(c), 600.9(c). In short, the authorization for the possible release of Volume II was inextricably intertwined with the question before the Eleventh Circuit.

Any doubt that the subject matter of the appeal and the co-defendants' application for an injunction were intertwined was fully dispelled by the co-defendants themselves. They agreed that "the question whether the special counsel was unconstitutionally appointed" is central "to determination of whether the Final Report may be lawfully released." Reply in Support of Emergency Motion for Injunctive Relief and Remand to District Court for Hearing at 7, *Trump II*, Dkt. 93; *see also id.* at 8 (contending that "[t]he Final Report stems from an unlawful appointment,

10

was prepared unlawfully, and is thus a legal nullity under the binding order issued by the district court in this case").

Because Judge Cannon plainly lacked jurisdiction to enter the injunction, DOJ's reliance on it to withhold Volume II is "improper" under FOIA. A transparently invalid injunction need not be honored by compliance. *See, e.g.*, *In re Novak*, 932 F.2d 1397, 1401 (11th Cir. 1991) ("[I]f the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, its order may be violated with impunity."); *In re Establishment Inspection of Hern Iron Works*, 881 F.2d 722, 726 (9th Cir. 1989) ("If a court order issues without personal or subject matter jurisdiction, the decree may be violated without incurring the penalty of criminal contempt."); *United States v. Revie*, 834 F.2d 1198, 1204 (5th Cir. 1987) ("[W]hen the issuing court lacks jurisdiction to give the order . . . a party may willfully disobey the order without fear of contempt sanction."); *United States v. Walker*, No. 94-cr-32S, 1994 U.S. Dist. LEXIS 19701, at *10–11 (W.D.N.Y. Dec. 21, 1994) (same).[5] Thus, unlike in *GTE Sylvania*, DOJ has discretion not to comply with this transparently invalid injunction—or, at a bare minimum and as explained below, discretion to request that the injunction be modified.

DOJ's reliance on the D.C. district court's decision in *American Oversight* is misplaced. *See* DOJ Br. 7–9. Although that decision involved a FOIA request for Volume II and touched on the jurisdiction of the Florida court, the FOIA plaintiff there did not raise the issue of whether the appeal had divested the district court of jurisdiction to issue the injunction. In fact, as the court acknowledged, the plaintiff assumed there was jurisdiction at the time the injunction was issued.

---

[5] *See also, e.g.*, *Dever v. Kelly*, 348 F. App'x 107, 112 (6th Cir. 2009) ("[I]t is well established that a party may ignore an injunction if it is 'transparently invalid or had only a frivolous pretense to validity.'" (quoting *Walker v. Birmingham*, 388 U.S. 307, 315 (1967)); *Brougham v. Oceanic Steam Navigation Co.*, 205 F. 857, 860 (2d Cir. 1913) ("When a court makes an order in a cause over which it has no jurisdiction, it is a nullity. No one is bound to obey it or is liable for disobeying it.").

*Am. Oversight v. U.S. Dep't of Just.*, No. 25-cv-383, 2025 U.S. Dist. LEXIS 76497, at *24 (D.D.C. Apr. 22, 2025). Instead, the plaintiff asked the court to determine whether jurisdiction had ceased to exist and was now "defunct" because of subsequent developments in the case. *Id.* at *23. It was that deep dive into the continuation of jurisdiction that the court declined to undertake, not the focused inquiry into the existence of jurisdiction at the time of issuance of the injunction that is required by *GTE Sylvania* and *Lykins*.

Moreover, contrary to DOJ's position, nothing precludes this Court from conducting that focused inquiry. *See, e.g.*, *Celotex*, 514 U.S. at 307–10 (analyzing whether first court had subject-matter jurisdiction to issue injunction that conflicted with second court's order); *Pratt*, 365 F.3d at 520 (explaining that "the district court should not have dismissed the Plaintiffs' case under the collateral attack doctrine without first determining that the Delaware bankruptcy court in fact had jurisdiction to enter the Confirmation Order"). The Second Circuit has held, for example, that when a party comes to a New York federal court to enforce a judgment obtained in a Georgia federal court, the New York court has the "inherent power" to determine whether the Georgia court lacked jurisdiction to enter that judgment in the first place. *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980). The defendant is not required to litigate the jurisdictional question in the foreign state in the first instance. *Id.* at 732–33. Except when barred by *res judicata*, such a collateral attack is permissible because "[a] judgment entered against parties not subject to the . . . jurisdiction of the rendering court is a nullity."[6] *Id.* at 732; *cf. Collins v. Foreman*, 729 F.2d 108, 111 (2d Cir. 1984) (explaining that "if the judgment is void[,] a collateral attack upon the void judgment may be made in any proceeding in any court where the validity of the judgment comes in issue" (ellipses omitted)); *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 223 (4th Cir.

---

[6] DOJ does not assert that issue or claim preclusion would apply here. *See, e.g.*, *McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007) (preclusion is an affirmative defense that is waived if not timely raised).

1999) (holding that a federal court has equitable authority to "entertain an original action to enjoin or otherwise grant relief from a judgment rendered not only by it, but also by another federal court" (ellipses omitted)). So too here: this Court can and should independently determine that Judge Cannon had no jurisdiction to issue the injunction at issue.

**B. The Speculative Possibility of Conflicting Injunctions Is Not a Basis for Dismissal**

DOJ makes much of the notion that a ruling in favor of The Times would lead to conflicting injunctions and urges the Court to dismiss the complaint on that basis. DOJ Br. 9. DOJ's position misreads *GTE Sylvania*, discounts its own complicity in creating such a potential scenario, and ignores this Court's ability to enter meaningful relief without creating a risk of conflicting injunctions. And at this point, such a conflict is speculative and not a proper basis for dismissal of a complaint.

*First*, there is no blanket prohibition barring a court from issuing a subsequent injunction that appears to contradict an earlier one. Had the Supreme Court intended that in *GTE Sylvania*, it would have said so. The rule enunciated there could have been that any injunction, even one issued without jurisdiction, must be obeyed until it is dissolved or modified in the originating court. That is not what the Supreme Court said. Nor have later courts read *GTE Sylvania* that way. *See, e.g.*, *Celotex*, 514 U.S. at 306–10 (reaffirming *GTE Sylvania*'s jurisdictional requirement and analyzing lower court's subject-matter jurisdiction); *Alley*, 590 F.3d at 1204 (recognizing the jurisdictional exception contained in *GTE Sylvania*). Instead, the Supreme Court recognized—in line with longstanding precedents—that an injunction binds a party only when it is issued by a court with proper jurisdiction. Absent jurisdiction, the injunction is a nullity and does not conflict with a subsequent order.

13

DOJ suggests that The Times should be required to bring its claims in the Southern District of Florida and have Judge Cannon resolve the dispute. DOJ Br. at 6. To try to make that argument, DOJ necessarily downplays what it has told the Florida court in recent months. Currently, two nonprofit groups have moved to intervene and to lift the injunction. One is asserting its rights under FOIA and the other is arguing that Volume II is a judicial document subject to public access under the common law and the Constitution, as set forth in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986). *See Trump I*, Dkt. 721 at 14–17. The two nonprofits, like The Times, have also requested Volume II through FOIA. *See Trump I*, Dkts. 717 at 5–6, 721 at 7–8. In Florida, DOJ has contended that the nonprofits' motions should be denied because the injunction's harm to the groups' rights under FOIA is not a sufficient basis to give them standing to challenge the injunction. *Trump I*, Dkt. 740, at 6 (arguing that a non-party should not be permitted to "intervene in a criminal case to contest an order that might have some secondary or collateral implications for that party's FOIA claims in another lawsuit"); *accord* DOJ Br. 8 n.3.[7]

Now DOJ wants to have it both ways: in this Court directing The Times to go to Florida to attack the injunction before Judge Cannon while telling Judge Cannon in Florida that the injunction's abridgement of a requester's rights under FOIA does not give the FOIA requester standing to be heard in her court. If accepted, DOJ's position would prevent The Times from litigating access to Volume II in *any* federal forum. That is squarely at odds with FOIA's jurisdictional provisions, which specify that this case is properly heard here. *See* 5 U.S.C. § 552(a)(4)(B) (requiring FOIA cases to be brought in "the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the

---

[7] Notably, DOJ has argued in Florida that intervention should be denied because "neither American Oversight nor Knight Institute ask the Court to adjudicate its FOIA rights." *Trump I*, Dkt. 740 at 6; *cf.* DOJ Br. 8 n.3 (claiming DOJ did not suggest "in the criminal action that a FOIA action was the proper forum to seek disclosure of Volume II").

District of Columbia"); *cf. Martin v. Wilks*, 490 U.S. 755, 763 (1989) ("The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights." (ellipses omitted)).

Understandably, district courts are reluctant to issue orders that may create competing obligations for litigants who are involved in another court proceeding. But that has not stopped courts from doing so when—in line with traditional equitable principles—there are strong doubts about the first decision and sound reasons for the second decision, including the need to prevent irreparable injury and the public interest. *See, e.g.*, *Wyoming v. U.S. Dep't of Agric.*, 570 F. Supp. 2d 1309, 1351–54 (D. Wyo. 2008) (ostensibly conflicting injunction against implementation of unlawful Forest Service rule was justified where court was confronted with different substantive issues, where "irreparable harm will be done if an injunction is not issued," and where injunction was in public interest), *reconsideration denied*, No. 07-cv-017, 2009 U.S. Dist. LEXIS 140623, at *8–11 (D. Wyo. June 15, 2009) (despite potential for agency to be in "untenable position of choosing between two conflicting injunctions," strong public interest in preventing environmental damage weighed in favor of maintaining court's own injunction), *rev'd on other grounds*, 661 F.3d 1209 (10th Cir. 2011). And as one court recently explained, where "the conflict is between district courts in different circuits, there is less concern for maintaining uniformity." *Familias Unidas por la Justicia v. U.S. Dep't of Lab.*, No. 24-cv-637, 2025 U.S. Dist. LEXIS 61520, at *17 n.9 (W.D. Wash. Mar. 28, 2025); *see id.* at *17 (finding that "as an equitable matter, the irreparable injury that Washington farmworkers will suffer without a second preliminary injunction weighs strongly

in favor of making an exception to the usual rule that courts should not subject a defendant to conflicting orders").

The prosecutions brought by Jack Smith have been attacked as improper, politically motivated, and a threat to the nation by President Trump, who ordered that counsel for Mr. Smith be stripped of his security clearance, and by DOJ, which has designated Mr. Smith as a target for investigation.[8] The public is harmed when a critical document that could shed light on whether Mr. Smith's investigation was tainted by political considerations or brought without sufficient evidence is potentially kept under lock and key forever. Courts have repeatedly recognized in the FOIA context that irreparable harm occurs when a requester is denied access to information it seeks to use to inform the public. *See, e.g., Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 187 (D.D.C. 2019) ("The likely irreparable harm to American Oversight also stems from the fact that, if nonexempt responsive records exist, the public may not otherwise have access to them."); *Brennan Ctr. for Just. v. Dep't of Com.*, 498 F. Supp. 3d 87, 102–03 (D.D.C. 2020) (harm analysis considers "public awareness" of the information and requester's "ability to inform the public of ongoing proceedings"). Balanced against that harm to the public is the lack of any public interest in having DOJ adhere to an invalid order.

---

[8] *See* Ken Dilanian & Ryan J. Reilly, *Trump Administration Fires DOJ Officials Who Worked on Criminal Investigations of the President*, NBC NEWS (Jan. 27, 2025), https://www.nbcnews.com/politics/justice-department/trump-administration-fires-doj-officials-worked-criminal-investigation-rcna189512. The president's ongoing efforts to retaliate against those connected to the special counsel investigations has been widely reported. *See, e.g.*, Devlin Barrett et al., *Trump Takes Aim at Law Firm Aiding Jack Smith*, N.Y. TIMES (Feb. 25, 2025), https://www.nytimes.com/2025/02/25/us/trump-jack-smith-law-firm-security.html; Caitlin Yilek & Kathryn Watson, *In Address About Vision for Justice Dept., Trump Airs Grievances About Prior Investigations Into Him*, CBS NEWS (Mar. 14, 2025), https://www.cbsnews.com/news/donald-trump-justice-department-remarks/; Sarah N. Lynch, *US Justice Department Fires Two Tied to Trump Probes, People Familiar Say*, REUTERS (June 10, 2025), https://www.reuters.com/world/us/us-justice-department-fires-two-tied-trump-probes-people-familiar-say-2025-06-10/.

*Second*, *GTE Sylvania* arose in a case where the injunction had been won by a third party and forced upon a federal agency that had "agree[d] with the requesters that the documents should be released." *GTE Sylvania*, 445 U.S. at 382. That is a very different posture than what happens when an agency either seeks or consents to an injunction and thus through its own behavior is undermining the public's rights under FOIA. This case parallels *Schoenberg v. FBI*, No. 18-cv-1738, 2020 U.S. Dist. LEXIS 155329 (C.D. Cal. May 8, 2020), where the FBI said it could not release certain documents under FOIA because it had sought and obtained from another court an order against disclosure. The court in the subsequent FOIA case held that "the FBI had some obligation to consider whether to seek [the order's] modification in light of Plaintiff's FOIA request." *Id.* at *27.

As the court reasoned, "although the seal order provided a basis not to disclose the materials, . . . [t]hese facts are distinct from those in *GTE Sylvania* where the [agency] was enjoined from releasing documents in an order obtained by another party." *Id.* Put simply, an agency cannot actively prevent the release of documents in one court and then claim to be powerless to do anything about it in another.

Here, it is true that DOJ did not initially seek or favor an injunction on release. But it has now reversed itself, as shown in the recent Joint Status Report. DOJ now not only acquiesces to the injunction but terms it "necessary and appropriate." *See Trump I*, Dkt. 738 at 1 ("The United States does not object to the Court keeping its order enjoining the Attorney General of the United States and the Department of Justice from releasing Volume II . . . in place."); *id.* at 2 ("The Court's Injunction Order was necessary and appropriate.").

Let's be clear about what DOJ has done—and not done—here. If DOJ has a problem with potentially facing conflicting orders from two separate courts, that is a problem largely of its own

making. It has turned a blind eye in Florida to the fact that the injunction was issued by a court with no jurisdiction to do so. And now that the criminal action has been dismissed with prejudice, the very basis of Judge Cannon's order—protecting the fair trial rights of the co-defendants—has evaporated.[9] *See Nauta*, 764 F. Supp. 3d at 1224–25. But DOJ chooses to ignore that, too, in the Florida case.[10] What remains is an injunction that purports to dictate how DOJ should respond to FOIA requests for Volume II. Rather than recognize the public's FOIA rights and seek modification or termination of the injunction so that the disclosure of Volume II could proceed, as it should, through a determination under FOIA, DOJ willfully seeks to *obstruct* FOIA requesters from obtaining the document. DOJ has placed itself in the same position as the FBI in *Schoenberg*: it has some obligation to seek relief in the Southern District of Florida from an unlawful order. *Cf. Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 791 (3d Cir. 1994) (before a confidentiality order can be entered against an agency, there must be "consideration of its effect on disclosure of government records to the public under state and federal freedom of information laws" (brackets omitted)).

---

[9] Although the co-defendants have claimed that they are still at risk of a renewed prosecution, *see Trump I*, Dkt. 738 at 3, 5–6, their concessions that "the United States Attorney's Office for the Southern District of Florida does not intend to revive the charges" and that the Eleventh Circuit dismissed the government's attempt to reinstate the prosecution "with prejudice," *id.* at 3, 5, render this argument preposterous. They further suggest that the report's disclosure of their criminal conduct could be embarrassing, *id.* at 4, but that is a concern that could properly be addressed through redaction in a FOIA release to the extent it has any merit whatsoever as a basis for denying information of public importance to the American public. In fact, the co-defendants are explicit that what they really want—and now seek with DOJ's support—is to thwart the rights of FOIA requesters such as The Times. *Id.* at 4–5 ("Mr. Nauta and Mr. De Oliveira remain concerned that the Freedom of Information Act . . . presents opportunities for mischief that might one day force the Attorney General's hand, despite her good faith intention to maintain the Report's confidential status.").

[10] DOJ's behavior is striking in light of the department's stated policies about transparency in criminal proceedings. From the Justice Manual § 9-5.150: "Because of the vital public interest in open judicial proceedings, every 60 days after termination of any proceeding closed pursuant to 28 C.F.R. § 50.9, Government attorneys must review the records of the proceedings to determine whether the reasons for closure still apply. As soon as the justification for closure ceases to exist, the Government must file an appropriate motion to have the records unsealed. *See* 28 C.F.R. § 50.9(f)."

And unlawful is exactly how the Florida order should be described. In addition to being void under the *Griggs* jurisdictional principle as a result of the appeal to the Eleventh Circuit, it also violates a fundamental, constitutional requirement that parties must have standing "for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). The injunction was written to extend to some point in the future, or maybe forever, but in any event long after potential injury to the fair trial rights that prompted it was no longer threatened. A district court lacks jurisdiction to issue an injunction extending beyond the temporal scope of any "actual case or controversy between the parties." *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020) (cleaned up); *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d Cir. 1997) ("It is well-settled that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation . . . ."); *cf. Trump v. CASA, Inc.*, 606 U.S. __, No. 24A884, slip op. at 17 (June. 27, 2025) ("Under this principle, the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*.") (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.")); *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (reiterating that "a plaintiff's remedy must be 'limited to the inadequacy that produced his injury in fact'"); *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) (explaining that "federal courts should not issue relief that extends further than necessary to remedy the plaintiff's injury"). Thus, even if this Court were to conclude that the injunction could have been valid at some point, Judge Cannon did not have jurisdiction to enjoin conduct beyond the time when any threat to the fair-trial rights of the defendants ceased to exist. DOJ should not be permitted to argue in favor of an unconstitutional order to deny the public its right to access a

presumptively public document. That is especially so when, as discussed above, DOJ in January asserted that Volume II could be kept confidential only during the pendency of the criminal prosecution.

This is hardly a novel conclusion. In other contexts, courts have found that a purportedly conflicting injunction does not excuse a party from complying with another court's order when the party procured that injunction for the purpose of evading such compliance. *See, e.g.*, *Motorola Credit Corp. v. Uzan*, No. 02-cv-666, 2002 U.S. Dist. LEXIS 15650, at *11–12 (S.D.N.Y. Aug. 22, 2002); *see also id.* at *13–14 (foreign injunction did not excuse party's failure to comply with New York court's order when party made no effort to oppose the other court's injunction). Similarly, in the FOIA context, an agency should not be permitted to rely on an injunction that was obtained with the object of avoiding FOIA's disclosure requirements. *Cf. In re Franklin Nat'l Bank Sec. Litig.*, 92 F.R.D. 468, 471 (E.D.N.Y. 1981) ("In the context of this case it cannot be said that the FDIC manipulated this court in order to avoid the agency's obligations under the FOIA."), *aff'd sub nom. FDIC v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982). At the very least, then, DOJ has an obligation to seek modification of Judge Cannon's order.[11]

When DOJ acquiesced to the injunction in the Florida case in March, The Times's FOIA litigation was already underway. By coordinating with the Florida co-defendants to keep an unlawful order in effect and then urging this Court to deny The Times's FOIA request based on that unlawful order, DOJ's withholding of Volume II is unequivocally "improper[]." 5 U.S.C. § 552(a)(4)(B).

---

[11] Indeed, were DOJ correct that The Times can neither collaterally attack the injunction here nor directly attack it by intervening in the Florida case, that would leave nobody *but* DOJ to ask Judge Cannon to lift her order.

*Third*, even if this Court is not inclined to compel DOJ directly to produce the document, dismissal out of a concern for conflicting injunctions would still be unwarranted because the Court can grant The Times meaningful relief without issuing such an order.

FOIA section 552(a)(4)(B) vests courts with broad equitable authority. *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 846 F.3d 1235, 1241–42 (D.C. Cir. 2017). While the typical equitable remedy in a FOIA case will be an order to produce documents, Congress did not intend that language "to limit the inherent powers of an equity court" in FOIA cases. *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974); *see Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("FOIA imposes no limits on courts' equitable powers in enforcing its terms." (citing *Renegotiation Bd.*, 415 U.S. at 19–20)). And when, as here, "federal law is at issue and 'the public interest is involved,' . . . a federal court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" *Citizens for Resp. & Ethics*, 846 F.3d at 1242 (quoting *Kansas v. Nebraska*, 574 U.S. 445, 454 (2015)).

This Court can use its broad and flexible equitable authority here to enter relief short of directing DOJ to release Volume II. There may come a time when this Court would need to resolve how DOJ should proceed in the face of two conflicting orders, and The Times would argue that this Court's order—grounded in lawful jurisdiction, necessary to remedy irreparable harm, and firmly in the public interest—should prevail. But that is not the Court's only choice.

We have seen, for instance, in the recent high-profile case of Kilmar Abrego Garcia that a district court has intermediate options when asked by a plaintiff to compel the Government to take some step. In *Abrego Garcia*, the district court was asked to order the Government to cause the release of Mr. Abrego Garcia from a Salvadoran prison and to return him to the United States for further proceedings on his immigration status. The Government claimed it lacked the authority to

do that. The Supreme Court endorsed an intermediate remedy, directing the Government to take steps to "facilitate" Mr. Abrego Garcia's return. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025); *see also Abrego Garcia v. Noem*, No. 25-1404, 2025 U.S. App. LEXIS 9237, at *3–5 (4th Cir. Apr. 17, 2025). Similarly, DOJ can avoid a possible contempt finding in either case by engaging in actions to meet its obligations under both—for instance, by asking Judge Cannon to withdraw the injunction and allow its release to be governed by FOIA or by asking the judge to limit the injunction to only parts of Volume II that would cause actual harm by disclosure. *See, e.g.*, *Chairs v. Burgess*, 143 F.3d 1432, 1438 (11th Cir. 1998) (party must make "in good faith all reasonable efforts to comply," but the court would "not interpret 'good faith' and 'reasonable efforts' to require necessarily that a party violate the order of one court to avoid violating the order of another court"); *NAACP v. McLaughlin*, 703 F. Supp. 1014, 1017–18 (D.D.C. 1989) (declining to initiate contempt proceedings against agency where it was subject to conflicting injunctions but nonetheless made "good faith" effort to comply). Under FOIA's broad grant of equitable authority, this Court can require DOJ to take steps to remedy the harm caused by the department's improper acquiescence to an invalid order.

Other options are available, too. Were the Court to find for The Times, it could stay any injunction compelling disclosure pending a decision on the nonprofits' motions for disclosing Volume II in the Southern District of Florida. *See, e.g.*, *Robertson v. Dep't of Defense*, 402 F. Supp. 1342, 1346 (D.D.C. 1975) ("Any danger that the [agency] could find itself the object of inconsistent injunctions can be mitigated through the use of stays pending final determination of the legal issues."); *Holland v. Apfel*, 23 F. Supp. 2d 21, 29 n.5 (D.D.C. 1998) (court could avoid potential for conflicting injunctions while still providing "meaningful relief" by "stay[ing] whatever equitable decree it might issue"). Separately, the Court could simply enter non-

injunctive, declaratory relief for The Times. *Holland*, 23 F. Supp. 2d at 29 n.5 (declaratory judgment would likewise offer "meaningful relief" without risk of conflicting injunctions); *Texas v. United States*, 328 F. Supp. 3d 662, 699, 741–42 (S.D. Tex. 2018) (declining to enjoin DACA to avoid conflicting with other courts' injunctions that had reversed DACA's recission but nonetheless finding that "complete relief" would be provided by declaratory judgment that DACA was unlawful).

In sum, this Court should deny the motion to dismiss and direct DOJ to complete the processing of The Times's FOIA request. There has yet to be a determination as to whether any statutory FOIA exemption should apply or whether any redactions of Volume II are permissible under FOIA. And, in a manner endorsed by *Schoenberg*, DOJ should be directed at a minimum to seek relief from the injunction in the Southern District of Florida to the extent that injunction is inconsistent with FOIA under the circumstances that now exist.

## II.
## UNRESOLVED ISSUES MAKE SUMMARY JUDGMENT IMPROPER AT THIS TIME

As set forth above, the injunction issued in the Southern District of Florida does not provide a basis for dismissing The Times's complaint. At this point, DOJ has not completed processing of The Times's FOIA request by determining whether any of FOIA's statutory exemptions apply and justify withholding all or part of Volume II. Notably, in the Florida proceedings, DOJ has raised the possibility that there is grand jury material in Volume II that the department may seek to withhold before disclosure. *See Trump I*, Dkt. 740, at 2. It follows that The Times has not yet had the opportunity to address any assertion of any exemptions. Additionally, DOJ has not taken any steps in the Southern District of Florida to seek the modification or dissolution of the injunction to protect the public's rights under FOIA and to avoid the potential for conflicting orders.

All of that must happen before summary judgment is considered. DOJ seeks a grant of judgment that would turn a blind eye to the law and the facts and allow DOJ to improperly withhold a presumptively public document to the detriment of the American public.

## **CONCLUSION**

For all the reasons set forth above, Plaintiffs respectfully ask this Court for an order (i) denying DOJ's motion to dismiss and its alternative motion for summary judgment and (ii) granting such other and further relief as requested here by The Times and as the Court deems just and proper.

Dated: New York, NY
       June 27, 2025

                  Respectfully submitted,

                  */s/ David E. McCraw*
                  David E. McCraw
                  Al-Amyn Sumar
                  Timothy Tai
                  The New York Times Company
                  Legal Department
                  620 8th Avenue
                  New York, NY 10018
                  Phone: (212) 556-4031
                  Fax: (212) 556-4634
                  mccraw@nytimes.com
                  al-amyn.sumar@nytimes.com
                  timothy.tai@nytimes.com

                  *Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the word count requirements of Local Civil Rule 7.1(c). According to the word count in Microsoft Word, which was used to prepare this brief, the number of words in this document, excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certificate, is 8,321.

*/s/ David E. McCraw*
David E. McCraw
