UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE NEW YORK TIMES COMPANY *et al.*,

        Plaintiffs,

  - against –

UNITED STATES DEPARTMENT OF JUSTICE,

        Defendant.

No. 25 Civ. 562 (GHW)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR FOR SUMMARY JUDGMENT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:   (212) 637-2709/2741
*Attorney for Defendant*

DANA WALSH KUMAR
*Assistant United States Attorney*
   – Of Counsel –

Defendant the United States Department of Justice ("DOJ") respectfully submits this memorandum of law in further support of its motion to dismiss the amended complaint (ECF No. 18) of plaintiffs The New York Times Company and reporter Charlie Savage (collectively, the "Times") pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Rule 56.

## Preliminary Statement

The Complaint must be dismissed because the Times fails to state a plausible claim for relief under FOIA. DOJ did not "improperly" withhold Volume II of the final report of former Special Counsel Jack Smith because Judge Cannon's injunction bars DOJ from releasing it.[1] Well-established Supreme Court precedent supports DOJ's position that it is unable to disclose the record under FOIA because of the injunction. Attempting to evade this precedent, the Times argues in opposition that DOJ should flout a district court order because the Times believes it was improperly issued. None of the cases cited by the Times concern facts similar to those here, nor do they suggest that this Court should upend the fundamental tenet that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 386 (1980). The Times' assertions amount to an impermissible collateral attack on a court order in a separate forum, which this Court should reject. The Court should dismiss the complaint pursuant to Rule 12(b)(6), based solely on the factual allegations in the amended complaint.[2]

---

[1] All defined terms have the same meanings set forth in the Government's opening brief ("Gov't Br."). ECF No. 24.

[2] The Government moved in the alternative for summary judgment and submitted a declaration in support of its motion. *See* ECF Nos. 24, 25. In opposition, the Times does not contest that the motion can be decided on the pleadings and does not address the Declaration of Vanessa R.

# ARGUMENT

## I. DOJ Must Comply with Judge Cannon's Injunction

It is undisputed that the district court in *United States v. Trump*, No. 9:23-cr-80101 (S.D. Fla.), issued an injunction prohibiting DOJ from releasing Volume II. *See United States v. Nauta*, 764 F. Supp. 3d 1216, 1225 (S.D. Fl. 2025). It is also undisputed that *GTE Sylvania* is controlling. That seminal case dictates that DOJ has not "improperly" withheld records under FOIA because of the injunction. 445 U.S. at 386. Yet the Times argues that the injunction is a "nullity" that DOJ could flout. This position is incorrect for several reasons.

First, it is impermissible for the Times to collaterally attack the district court's injunction in this separate proceeding. *GTE Sylvania* reaffirmed the well-established "doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed." *Lykins v. DOJ*, 725 F.2d 1455, 1460 (D.C. Cir. 1984) (internal quotation marks omitted). Although an "exception to the collateral bar rule is appropriate for transparently void orders, it is inappropriate for arguably proper orders." *Matter of Providence J. Co.*, 820 F.2d 1342, 1347 (1st Cir. 1986), *opinion modified on reh'g*, 820 F.2d 1354 (1st Cir. 1987). Such a distinction is "necessary both to protect the authority of the courts when they address close questions and to create a strong incentive for parties to follow the orderly process of law." *Id.* Indeed, chaos would ensue if litigants were permitted to pick and choose which court orders they follow.

The Times relies on the "only possible exceptions to this important public policy" "if a court lacks jurisdiction over the subject matter of the order or the order has only a frivolous

---

Brinkmann. Accordingly, the Court can decide the Government's motion based solely on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6).

pretense to validity." *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 399 (4th Cir. 2001). The cases cited by the Times, however, do not suggest that a court adjudicating FOIA claims has the ability to overturn an order issued by a court in a separate criminal proceeding. *See* Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 28 ("Pl. Br."), 14-15. In *Pratt v. Ventas*, for example, which did not involve FOIA, the court declined to set aside an order issued by a different court, noting that the Delaware bankruptcy court in that case had adjudicated the issue of its own jurisdiction and that a party "that has an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." 365 F.3d 514, 520-21 (6th Cir. 2004) (internal quotation makes omitted) (alteration in original).

The court in *In re: Soundview Elite, Ltd.*, another non-FOIA case, similarly found that "an order's arguable invalidity is not sufficient, on its own, to except a party from the collateral bar doctrine." No. 15 Civ. 5666 (KPF), 2016 WL 1178778, at *11 (S.D.N.Y. Mar. 23, 2016). Orders must typically be challenged in the court issuing the challenged order. The court in *Soundview* observed that "[w]ere the law otherwise, the exception would swallow the rule, and courts of appeals would largely be out of a job; litigants would effectively become their own private appeals courts, deciding when a ruling does or does not warrant compliance." *Id.* Although the court did not "foreclose the possibility that circumstances might arise under which an order's violation of due process was so blatantly egregious and prejudicial as to render it transparently invalid," those circumstances were not present there. *Id.* (internal quotation marks omitted). Nor are they present here, particularly considering litigants are actively contesting and seeking the rescission of the injunction in the Southern District of Florida.

As the Times concedes, *Lykins* is also distinguishable. Pl. Br. 9. In *Lykins*, a FOIA requestor sought a record from the U.S. Parole Commission, which declined to release the record pursuant to a "policy" set forth by the court barring disclosure. The court noted that the circumstances present there, where "there were no formal judicial proceedings, no opportunity for Mr. Lykins to object to the court's 'policy,' no chance for intervention, and no concrete case or controversy before the Virginia District Court," distinguished the case from "*GTE Sylvania's* formal injunction issued after a proceeding to which Consumers Union could easily have become a party." *Lykins*, 725 F.2d at 1460-61. Here, unlike *Lykins*, Judge Cannon did enter a formal injunction, and there are ongoing proceedings before Judge Cannon to determine whether that injunction should remain in place. As the *Lykins* court noted, "those who object to a court order are expected to make their objection by means of the rules and procedures in accord with which the judicial system operates, for a court's ability to command adherence to its procedures and to resolve disputes depends on its ability to compel obedience to orders properly issued." *Id.* Indeed, "[t]hose rules and procedures provide a fair opportunity to object to or appeal mistaken rulings, and even interested individuals who are not parties to the proceedings have the opportunity to intervene under the modern Federal Rules of Civil Procedure." *Id.* Two organizations (American Oversight and the Knight First Amendment Institute) have done precisely what the *Lykins* court advised: they have moved to intervene in the criminal action to seek dissolution or rescission of the injunction, and that motion is pending. Those proceedings are pending, and if Judge Cannon denies relief, recourse may be sought through an appeal to the Eleventh Circuit. In the meantime, the injunction stands and DOJ's withholding of Volume II is thus not improper.

Second, even if this Court were to conduct an analysis regarding whether Judge Cannon had jurisdiction to issue the injunction in the first place, it should come to the same conclusion as

the district court in *American Oversight v. DOJ*. The court in *American Oversight* noted that "American Oversight [did] not contest that Judge Cannon *had* jurisdiction to issue the injunction when she did in January." No. CV 25-383 (TJK), 2025 WL 1167955, at *8 (D.D.C. Apr. 22, 2025) (internal quotation marks omitted). The court further found that the "appeal of [Judge Cannon's] order dismissing the indictment was still live then," concluding that this was "not a case where the injunction was transparently invalid—for jurisdictional or other reasons—when Judge Cannon entered it." *Id.* (internal quotation marks omitted). Nor have the parties seeking to intervene in the Florida litigation raised the argument that the Times is now making here—that Judge Cannon did not have jurisdiction to enter the injunction in the first place because the case had already been appealed to the Eleventh Circuit. In its motion to intervene, American Oversight noted that Judge Cannon "granted injunctive relief precluding the release of Volume II pursuant to its supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." Case No. 23-cr-80101 (S.D. Fla.), ECF No. 717 at 9 (internal quotation marks omitted). American Oversight went on to argue that the *continuation* of the injunction was no longer proper because the criminal case had been dismissed, but did not dispute that Judge Cannon had the authority to issue the injunction in the first place. *Accord* Case No. 23-cr-80101 (S.D. Fla.), ECF No. 721 at 10 (Knight Institute's motion to intervene similarly noting that the "injunction banning release of the report *is no longer* a necessary or appropriate exercise of this Court's supervisory authority") (emphasis supplied). Although these parties contest whether the injunction should remain in place, neither disputed that the court had jurisdiction to enter it in the first place. DOJ similarly did not argue that Judge Cannon lacked jurisdiction to enter the injunction barring disclosure.

The Times ignores all of this, including the D.C District Court's analysis in *American Oversight*, and instead argues that the injunction is "transparently invalid" such that it need not be honored. Pl. Br. 11. The Times asserts that the "authorization for the possible release of Volume II was inextricably intertwined with the question before the Eleventh Circuit," which was whether the appointment of Mr. Smith as special counsel was constitutional. Pl. Br. 10. This argument, however, disregards the reason that the injunction was put in place, which was to prevent "a substantial and unacceptable risk of prejudice to Defendants" who were subject to a pending criminal case at the time the injunction issued. *Nauta*, 764 F. Supp. 3d at 1225. This is clearly collateral to the central question that was appealed to the Eleventh Circuit, which was whether the prosecution was valid in the first place.

In further support of its argument that the injunction is invalid, the Times relies on statements by the defendants in the Florida case regarding the nature of the appeal that was raised to the Eleventh Circuit. Pl. Br. 10. But those same defendants, in their January 10, 2025 motion requesting a further stay from Judge Cannon, noted that the Eleventh Circuit declined to rule on their request that the initial injunction remain in effect and that, to the extent an appellant sought "relief from the district court's January 7, 2025, order temporarily enjoining Appellant, Appellant may file a notice of appeal from that order." *See* Case No. 23-cr-80101 (S.D. Fla.), ECF No. 689 at 3; *see also* Case No. 24-12311 (11th Cir.), ECF No. 100. Thus, when a motion was made to the Eleventh Circuit to enjoin the release of Volume II, the Eleventh Circuit declined to grant the motion and noted that the Government could appeal the district court's order separately if it so chose. Case No. 24-12311 (11th Cir.), ECF No. 100. Indeed, the defendants argued that this action by the Eleventh Circuit "clearly signaled that it view[ed] the questions raised by this dispute [the defendants' application for an injunction] as properly before [the district court] in the first

instance." Case No. 23-cr-80101 (S.D. Fla.), ECF No. 689 at 3. This directly contradicts the Times' argument that the pending appeal in the Eleventh Circuit and the application for an injunction "were intertwined" such that the district court did not have jurisdiction to issue the injunction. *See* Pl. Br. 10.

Accordingly, although the Court should not take on the "kind of roving jurisdictional inquiry" that the *American Oversight* court cautioned against, this inquiry reveals that Judge Cannon did have jurisdiction to issue the injunction, and certainly there was no "transparent" lack of jurisdiction. The continued validity of the injunction is currently being contested in district court in Florida, and the outcome of that litigation may be appealed. The Times should not be allowed to collaterally attack that process from this district. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."); *In re Crim. Contempt Proc. Against Gerald Crawford and Michael Warren*, 329 F.3d 131, 138 (2d Cir. 2003) ("Having found that a binding order existed as to the appellants, we conclude that they are subject to the collateral bar doctrine, which states that "a party may not challenge a district court's order by violating it.") (quoting *United States v. Cutler,* 58 F.3d 825, 832 (2d Cir. 1995)); *see also Matter of Providence Journal Co.*, 820 F.2d at 1347-48 ("[I]f the court reviewing the order finds the order to have had *any preten[s]e* to validity at the time it was issued, the reviewing court should enforce the collateral bar rule. Such a heavy presumption in favor of validity is necessary to protect the rightful power of the courts." (emphasis added)).

## II.    DOJ's Position in the Florida Litigation Is Immaterial

Finally, DOJ's current position in the Florida litigation is immaterial, as DOJ is required to abide by the pending court order enjoining it from releasing Volume II. DOJ has no obligation to seek dissolution of the injunction. Unlike the case in *Schoenberg v. FBI*, where the Government

originally requested that the search warrant records in question be kept under seal to protect its then-ongoing law enforcement investigation, here, DOJ initially opposed the entry of the injunction. *See Schoenberg v. FBI*, No. LA CV 18-01738 JAK (AGRX), 2020 WL 4937813, at *9 (C.D. Cal. May 8, 2020) (there, seal order "as to warrant was entered by the district court in response to a request by the FBI"), *aff'd*, 2 F.4th 1270 (9th Cir. 2021). Indeed, Judge Cannon dismissed the Government's initial arguments as to why it should have been permitted to disclose Volume II to select members of Congress and entered the injunction. *See Nauta*, 764 F. Supp. 3d at 1216. And unlike in *Schoenberg*, where it was unclear whether the court intended to continue the government-requested seal following the conclusion of the law enforcement investigation, Judge Cannon has made very clear that the injunction remains in force until she determines otherwise. Case No. 23-cr-80101 (S.D. Fla.), ECF No. 718 ("The Court's January 21, 2025 Order [ECF No. 714] remains in effect per the clear terms of that Order.").

The continued validity of the injunction remaining in place is within the purview of Judge Cannon to decide, and DOJ's current position regarding the issue is immaterial. So long as the injunction remains in effect, DOJ is not "improperly" withholding Volume II from being release in response to the Times' FOIA requests.

## CONCLUSION

For these reasons, and the reasons stated in DOJ's opening memorandum of law, the Court should dismiss the Times' amended complaint.

Date:  New York, New York
       July 11, 2025

                                          Respectfully submitted,

                                          JAY CLAYTON
                                          United States Attorney for the
                                          Southern District of New York

By:    <u>/s/ *Dana Walsh Kumar*</u>
        DANA WALSH KUMAR
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-2741
        dana.walsh.kumar@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 2,615 words.