USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/4/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                               :
THE NEW YORK TIMES COMPANY, *et al.*,  :
                                               :
                              Plaintiffs,  :    1:25-cv-562-GHW
                                             :
                -v-                     :    MEMORANDUM OPINION &
                                             :              ORDER
UNITED STATES DEPARTMENT OF    :
JUSTICE,                                     :
                                             :
                                Defendant.  :
                                             :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

      In July 2023, following a criminal investigation by then-Special Counsel Jack Smith, criminal charges related to the alleged mishandling of classified documents were filed in the U.S. District Court for the Southern District of Florida against then-former President Donald J. Trump and his alleged co-conspirators. The indictment was dismissed in July 2024 after Judge Aileen M. Cannon, the presiding judge in the criminal case, held that the appointment of Special Counsel Smith violated the Appointments Clause of the U.S. Constitution. The dismissal was promptly appealed to the Eleventh Circuit. While the appeal was pending, Special Counsel Smith delivered to then-Attorney General Merrick Garland his final report on his criminal investigations into President Trump and his co-defendants. On motion of President Trump's co-defendants, Judge Cannon issued an order indefinitely enjoining the Department of Justice (the "DOJ") and its employees from releasing the second volume of Special Counsel Smith's report ("Volume II").

      Plaintiffs Charlie Savage and The New York Times Company (the "NY Times") filed a Freedom of Information Act ("FOIA") request for the release of Special Counsel Smith's report. Their request was denied as to Volume II, so Savage and the NY Times filed a complaint in this

Court requesting an order compelling the DOJ to release it. Because the Court declines to hold that Judge Cannon lacked jurisdiction to issue her injunction, the Court finds that the DOJ is not improperly withholding Volume II of the Special Counsel's report. The DOJ's motion to dismiss this action is therefore GRANTED.

II.     **BACKGROUND**[1]

    **A.  Plaintiffs' FOIA Request for the Jack Smith Report**

On January 7, 2025, then-Special Counsel Smith delivered to then-Attorney General Garland a two-volume report (the "Final Report") on the Special Counsel's criminal cases filed against President Trump. Dkt. No. 18 ("Am. Compl.") ¶¶ 9–10. The first volume ("Volume I") concerned the criminal charges "related to President Trump's alleged efforts to overturn the results of the 2020 election." *Id.* ¶ 10. The second volume ("Volume II") concerned President Trump's "alleged mishandling of classified documents." *Id.* Volume I was released publicly as soon as a week after the report was delivered to Attorney General Garland. *Id.* ¶ 11. Volume II has not been released publicly; Attorney General Garland stated that he would not release Volume II because the charges against President Trump's two co-defendants in the classified documents case, Waltine Nauta and Carlos De Oliveira (the "Co-Defendants"), remained pending on appeal. *Id.* Plaintiffs assert that Volume II "may shed light on President Trump's motives for allegedly removing a trove of classified documents from the White House in 2021" and that it "implicate[s] some 'anticipated' members of

---

[1] All facts alleged in the Amended Complaint, Dkt. No. 18, are accepted as true for the purposes of this Rule 12(b)(6) motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court also considers all documents incorporated by reference in the Amended Complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that in considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint"). And because the Amended Complaint references criminal proceedings in the U.S. District Court for the Southern District of Florida, the Court takes judicial notice of filings, documents, transcripts, and orders in prior proceedings related to this case. *See Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*.").

the President's administration." *Id.* ¶ 16.

On January 8, 2025, Plaintiff Charlie Savage, on behalf of the NY Times, submitted a FOIA request, FOIA-2025-01744 (the "Request"), to the DOJ. *Id.* ¶ 23. "The Request sought 'a copy of the report by special counsel Jack Smith to Attorney General Merrick Garland, including the volume about the election case and the volume about the classified documents case.'" *Id.* On January 10, 2025, Mr. Savage, again on behalf of the NY Times, resubmitted the Request with a request for expedited processing. *Id.* ¶ 24. By January 21, 2025, no determination had been made on Plaintiffs' request for expedited processing, *id.* ¶ 26, so Plaintiffs filed this action, *see* Dkt. No. 1. On January 24, 2025, the DOJ granted expedited processing of the Request. Am. Compl. ¶ 27. The DOJ then denied the Request on February 5, 2025. *Id.* ¶ 28. Plaintiffs' subsequent administrative appeal was denied on March 11, 2025. *Id.* ¶¶ 30–31.

As the basis for its decision to deny the Request, the DOJ cited the January 21, 2025 injunction issued by Judge Cannon in the criminal proceeding in the U.S. District Court for the Southern District of Florida related to the mishandling of classified documents, Case No. 9:23-cr-80101 (the "Florida Criminal Case"). *Id.* ¶ 32.

### B. Relevant Procedural History of the Florida Criminal Case

On June 8, 2023, an indictment was filed against then-former President Trump and Waltine Nauta. Florida Criminal Case, Dkt. No. 3. A superseding indictment was filed on July 27, 2023 adding Carlos De Oliviera as a third co-defendant. Florida Criminal Case, Dkt. No. 85. On July 15, 2024, Judge Cannon dismissed the superseding indictment, holding among other things that Special Counsel Smith's appointment violated the Appointment Clause of the U.S. Constitution. Florida Criminal Case, Dkt. No. 672; *U.S. v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), *appeal dismissed,* No. 24-12311, 2024 WL 6081345 (11th Cir. Nov. 26, 2024), and *appeal dismissed sub nom. U.S. v. Nauta*, No. 24-12311, 2025 WL 2017539 (11th Cir. Feb. 11, 2025). The DOJ appealed

3

the dismissal on July 17, 2024. *See* Florida Criminal Case, Dkt. No. 673; Case No. 24-12311 (11th Cir.) ("11th Cir. Docket"), Dkt. No. 1.

The DOJ moved to dismiss the appeal as to President Trump on November 25, 2024, after President Trump was reelected to the presidency. 11th Cir. Docket, Dkt. No. 79. The Eleventh Circuit granted the motion on November 26, 2024. 11th Cir. Docket, Dkt. No. 81. The appeal remained pending as to the Co-Defendants.

On January 6, 2025 and January 7, 2025 respectively, the Co-Defendants filed emergency motions in the Florida Criminal Case and in the Eleventh Circuit to enjoin the United States and its officers and agents from releasing the Final Report until their criminal proceedings concluded. Florida Criminal Case, Dkt. No. 679; 11th Cir. Docket, Dkt. No. 85. On January 7, 2025, Judge Cannon issued a temporary injunction against the DOJ, Attorney General Garland, and Special Counsel Smith, preventing them from releasing, sharing, or transmitting the Final Report or any information or conclusions contained within it until three days after resolution of the emergency motion pending before the Eleventh Circuit. Florida Criminal Case, Dkt. No. 682.

On January 9, 2025, the Eleventh Circuit denied the emergency motion in a summary order. 11th Cir. Docket, Dkt. No. 100. That order stated:

> Appellees' "Emergency Motion for Injunction with Relief Requested by January 10, 2025" is DENIED. To the extent that Appellant seeks relief from the district court's January 7, 2025, order temporarily enjoining Appellant, Appellant may file a notice of appeal from that order.

*Id.* The next day, on January 10, 2025, the DOJ filed an appeal from Judge Cannon's January 7, 2025 temporary injunction. 11th Cir. Docket, Dkt. No. 101.

On January 13, 2025, Judge Cannon denied in part the emergency motion pending in the Florida Criminal Case. Florida Criminal Case, Dkt. No. 697. Judge Cannon's January 13, 2025 order denied the emergency motion with respect to Volume I. *Id.* at 2. However, Judge Cannon reserved ruling on the motion with respect to Volume II and reinstated the temporary injunction

4

pending resolution of the motion as to Volume II.  *Id.* at 3–4.  The January 13, 2025 order also stated:

> A final word on this Court's jurisdiction to enter this Order.  The Eleventh Circuit's January 9, 2025, summary denial of Defendants' similar motion for emergency injunctive relief as filed in the Eleventh Circuit contains no directive to this Court restricting its authority to adjudicate the properly filed Emergency Motion in this Court.  Nor is the Court persuaded by the United States that it is divested of jurisdiction to consider the Emergency Motion, which concerns the release of information that directly implicates the fair trial rights of Defendants Nauta and De Oliveira and clearly activates this Court's obligation to preserve the integrity of this proceeding should the Eleventh Circuit find error in the Court's Order Dismissing Superseding Indictment Based on Appointments Clause Violation.

*Id.* at 5 (citations omitted).

On January 21, 2025, Judge Cannon issued an order granting the Co-Defendants' emergency motion to preclude the release of Volume II.  Florida Criminal Case, Dkt. No. 714 (the "Permanent Injunction").  Citing the due process rights of the Co-Defendants, Judge Cannon enjoined the DOJ from releasing Volume II.  *Id.*  Specifically,

> Attorney General Garland or his successor(s), the Department of Justice, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals, are enjoined from (a) releasing, sharing, or transmitting Volume II of the Final Report or any drafts of Volume II outside the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in Volume II or in drafts thereof.

*Id.* at 13.  The Permanent Injunction further states that it

> remains in effect pending further Court order, limited as follows.  No later than thirty days after full conclusion of all appellate proceedings in this action and/or any continued proceedings in this Court, whichever comes later, the parties shall submit a joint status report advising of their position on this Order, consistent with any remaining Rule 6(e) challenges or other claims or rights concerning Volume II, as permitted by law.  Any disagreements between the parties can be denoted separately.

*Id.* at 13–14.

On January 29, 2025, after President Trump took office, the DOJ moved to dismiss the appeal pending in the Eleventh Circuit.  11th Cir. Docket, Dkt. No. 111.  The Eleventh Circuit

5

granted the motion on February 11, 2025.  11th Cir. Docket, Dkt. No. 113.  The DOJ and the Co-Defendants subsequently filed a joint letter stating that they do not object to Judge Cannon keeping the Permanent Injunction in place.  Florida Criminal Case, Dkt. No. 738.

On February 14, 2025, American Oversight, a nonprofit entity "committed to promoting transparency and ensuring accountability of government officials," filed a motion to intervene in the Florida Criminal Case with the intention of moving to lift the Permanent Injunction.  Florida Criminal Case, Dkt. No. 717.  The Knight First Amendment Institute at Columbia University (the "Knight Institute"), a nonprofit entity "that works to defend the freedoms of speech and the press in the digital age," filed a similar motion to intervene on February 24, 2025.  Florida Criminal Case, Dkt. No. 721.  The Knight Institute seeks recission of the Permanent Injunction and public release of Volume II.  *Id.*  The Co-Defendants filed opposition to the motions to intervene on March 14, 2025.  Florida Criminal Case, Dkt. No. 739.  The DOJ filed opposition to the motions to intervene on March 24, 2025.  Florida Criminal Case, Dkt. No. 740.  The prospective intervenors filed replies on March 31, 2025.  Florida Criminal Case, Dkt. Nos. 745, 746.  The motions to intervene remain pending before Judge Cannon.  *See* Florida Criminal Case, Dkt. No. 751.

### C. Procedural History of the Present Action

Plaintiffs commenced this action on January 21, 2025.  Dkt. No. 1.  On February 12, 2025, the Court granted Plaintiffs' application to stay this matter pending resolution of the administrative appeal challenging the DOJ's denial of the Request.  Dkt. No. 13.  Plaintiffs filed the Amended Complaint on April 30, 2025, requesting "an order compelling Defendant to release [Volume II]" pursuant to 5 U.S.C. § 552.  Am. Compl. at 6–7.  On June 6, 2025, the DOJ filed a motion to dismiss the Amended Complaint or, in the alternative, for summary judgment, Dkt. No. 23, and an accompanying memorandum of law, Dkt. No. 24.  Plaintiffs filed opposition to the motion on June 27, 2025.  Dkt. No. 28.  The DOJ filed its reply on July 11, 2025.  Dkt. No. 29.

6

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In a motion to dismiss under Rule 12(b)(6), the Court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive dismissal under Rule 12(b)(6), a complaint must allege sufficient facts to state a plausible claim. *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). The plaintiff's claim must be more than "speculative." *Twombly*, 550 U.S. at 545. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a

7

district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. A court may also consider documents that are "integral to" the complaint, meaning that the complaint relies heavily upon its terms and effects. *Id.* "[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (internal quotation marks omitted) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134).[2]

## IV.    DISCUSSION

Because Plaintiffs have failed to establish that Judge Cannon lacked jurisdiction to enter the Permanent Injunction, the Court holds that the DOJ did not improperly withhold Volume II, and therefore Plaintiffs' complaint fails to state a claim under FOIA for the release of Volume II. "Congress intended FOIA to permit access to official information long shielded unnecessarily from public view." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citation and internal quotation marks omitted). "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Id.* The statute further provides:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B). "This section requires a showing of three components: the agency must have (1) improperly (2) withheld (3) agency records." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384 (1980). The Court must "determine the matter de novo," and "the burden is

---

[2] The DOJ moved for summary judgment in the alternative, *see* Dkt. No. 23, but because the Court need not consider the declaration attached to the DOJ's motion, *see* Dkt. No. 25, in order to resolve the motion, the Court applies only the Rule 12(b)(6) standard.

8

on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B).

In *GTE Sylvania*, the U.S. Supreme Court held that where "the agency has been subject to a temporary restraining order or a preliminary or permanent injunction barring disclosure," there is "no discretion for the agency to exercise," and therefore "the information . . . is not being 'improperly' withheld." 445 U.S. at 386. The Court went on to say that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Id.* Finding that the district court "had jurisdiction to issue the . . . permanent injunction[]" and that the injunction was not "challenged as 'only a frivolous pretense to validity,'" the Court held that the federal agency "was required to obey the injunction[] out of 'respect for judicial process.'" *Id.* at 386–87 (quoting *Walker v. City of Birmingham*, 388 U.S. 307, 314–321 (1967)); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995) (analyzing whether the bankruptcy court "lacked *jurisdiction* to issue the [] injunction" at issue (emphasis in original)); *Alley v. U.S. Dept. of Health and Human Services*, 590 F.3d 1195, 1204 (11th Cir. 2009) ("The Supreme Court did specify in *GTE Sylvania* that the rule of that case is subject to exceptions when the issuing court lacked personal or subject matter jurisdiction or when the injunction had 'only a frivolous pretense to validity' at the time it was issued."); *cf. In re Crim. Contempt Proceedings Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 139 n.6 (2d Cir. 2003) ("Exceptions to the collateral bar doctrine lie where the order exceeded the district court's jurisdiction or where the order was transparently invalid.").

Plaintiffs seek to collaterally attack the Permanent Injunction only on the basis that Judge Cannon lacked jurisdiction to issue it. The Court approaches this issue guided by the principle that "the original court's jurisdiction is presumptively valid." *Covington Indus., Inc. v. Resintex A. G.*, 629 F.2d 730, 732 (2d Cir. 1980); *cf. Cairo Amman Bank v. Bucheit*, 1 Fed. App'x. 98, 99 (2d Cir. 2001) (summary order) ("The issue of jurisdiction, if not litigated in the issuing court, may be raised in the

enforcing court."); *In re: Soundview Elite, Ltd.*, No. 15-cv-5666 (KPF), 2016 WL 1178778, at *11 (S.D.N.Y. Mar. 23, 2016) ("An order's arguable invalidity is not sufficient, on its own, to except a party from the collateral bar doctrine."); *Matter of Providence J. Co.*, 820 F.2d 1342, 1347–48 (1st Cir. 1986), *opinion modified on reh'g,* 820 F.2d 1354 (1st Cir. 1987) ("As a general rule, if the court reviewing the order finds the order to have had any pretence to validity at the time it was issued, the reviewing court should enforce the collateral bar rule. Such a heavy presumption in favor of validity is necessary to protect the rightful power of the courts."). "Were the law otherwise, the exception would swallow the rule, and courts of appeals would largely be out of a job." *Id.* Indeed, Plaintiffs "cite[] no case in which a FOIA court probed the jurisdiction of another court as [they] suggest[] here." *Am. Oversight v. U.S. Dept. of Justice*, No. 25-cv-383 (TJK), 2025 WL 1167955, at *8 (D.D.C. Apr. 22, 2025).

Plaintiffs have not overcome the presumptive validity of Judge Cannon's jurisdiction to issue the Permanent Injunction.[3] Judge Cannon analyzed the jurisdictional question and held that she

---

[3] There is a legitimate argument that the issue of Judge Cannon's jurisdiction to enter the Permanent Injunction should be litigated exclusively before her and, as appropriate, the 11th Circuit Court of Appeals, rather than through a collateral challenge in this FOIA action. The DOJ raises as the argument that the Court should not even assess whether Judge Cannon had jurisdiction to enter the Permanent Injunction because ordering the DOJ to release Volume II would put the DOJ in the "impossible position of having to decide which of two conflicting court orders to follow." Dkt. No. 24 at 9. While the case law does support the view that a federal district court may entertain a collateral attack on the judgment of another court, this case presents an unusually delicate problem. Oftentimes, a collateral attack is "purely defensive in nature," "invoked in opposition to enforcement proceedings." *Covington Indus., Inc. v. Resintex A. G.*, 629 F.2d 730, 732–33 (2d Cir. 1980). In those cases, the second court merely refuses to enforce a prior order against a party or parties. *See, e.g.*, *In re Novak*, 932 F.2d 1397, 1401 (11th Cir. 1991) ("[I]f the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, its order may be violated with impunity. [T]he original order is deemed a nullity, and the accused contemnor cannot be fairly punished for violating [it]." (citations omitted)). Here, by contrast, Plaintiffs ask this Court to issue an order directing a party to act in direct violation of an injunction ordered by another district court in a case that remains pending. The DOJ would be left in the position of facing two conflicting orders, neither of which can be obeyed without violation of the other. Because, as discussed below, the Court finds that Plaintiffs fail to rebut the presumption that Judge Cannon had jurisdiction to issue the Permanent Injunction, the Court need not concern itself with the challenging circumstance that would otherwise arise.

Needless to say, a contrary finding would implicate notions of comity between federal district courts. *See Am. Oversight*, 2025 WL 1167955, at *9 (holding that granting a FOIA request with respect to Volume II "would risk imposing the problem that [*GTE Sylvania*] seeks to avoid: requiring an agency to commit contempt of court in order to comply with FOIA" because "[a] decision by this Court about Judge Cannon's jurisdiction would not bind her as a matter of precedent"). Because there is ongoing litigation before Judge Cannon in the earlier-filed case on the factual

possessed the "obligation to preserve the integrity of th[e] proceeding should the Eleventh Circuit" overturn her dismissal order.  Florida Criminal Case, Dkt. No. 697 at 5; *see also* Permanent Injunction at 7 ("As a broad proposition whose force depends on the circumstances presented, '[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials.'" (quoting *United States v. DiBernardo*, 775 F.2d 1470, 1475–76 (11th Cir. 1985))).

As acknowledged by Judge Cannon, the factual and procedural history of the Florida Criminal Case is novel, *see* Permanent Injunction at 9 ("Never before has the Department of Justice, prior to the conclusion of criminal proceedings against a defendant—and absent a litigation-specific reason as appropriate in the case itself—sought to disclose outside the Department a report prepared by a Special Counsel containing substantive and voluminous case information."), and the Court sees no transparent error in Judge Cannon's determination of her jurisdiction.  "[A] notice of appeal . . . does not prevent the district court from taking action 'in furtherance of the appeal.'  Nor does it prevent the court from entertaining motions on matters collateral to those at issue on appeal." *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003) (citations omitted); *see also Merrimack River Sav. Bank v. City of Clay Ctr.*, 219 U.S. 527, 534 (1911) ("That the circuit court, to the end that the *status quo* might be preserved pending such appeal, had the power to continue an injunction in force by virtue of its inherent equity power, is not doubtful."); *United States v. PetroSaudi Oil Servs. (Venezuela) Ltd.*, 70 F.4th 1199, 1211 (9th Cir. 2023) (holding that the district court retained jurisdiction to issue a protective order in a civil forfeiture case to preserve the status quo during the pendency of an appeal) ("A district court may retain jurisdiction when it has a duty to supervise the

---

and legal issues surrounding the continued effectiveness of the Permanent Injunction, this Court might also consider applying the first-filed rule and staying this proceeding or transferring this proceeding to the Southern District of Florida.  *See Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 250–51 (E.D.N.Y. 2012).  However, neither party invoked the first-filed rule in this case, and the Court need not rely on it to resolve the present motion.

11

status quo during the pendency of an appeal, or in aid of execution of a judgment that has not been superseded."); *cf.* Fed. R. App. P. 8(a)(1) ("A party must ordinarily move first in the district court for the following relief: . . . an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."). "[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Celotex*, 514 U.S. at 313 (internal quotation marks omitted); *see also Matter of Providence J. Co.*, 820 F.2d at 1347–48.

Further, it is not apparent that the Permanent Injunction affected any "aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *see also Johnson v. 3M Co.,* 55 F.4th 1304, 1309 (11th Cir. 2022) ("[A]n interlocutory appeal does not completely divest the district court of jurisdiction. The district court has authority to proceed forward with portions of the case not related to the claims on appeal." (internal quotation marks and citations omitted)). The appeal concerned the dismissal of the indictments based on a finding that Special Counsel Smith's appointment was constitutionally improper. The Permanent Injunction only relates to the appeal, so far as Plaintiffs contend, in that Special Counsel Smith wrote the Final Report. *See* Dkt. No. 28 at 10. But the pending appeal did not pose any questions regarding the validity of the Final Report or the propriety of its release. *See* 11th Cir. Docket, Dkt. No. 18, Brief for the United States; *see Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999) ("The res judicata and waiver defenses on which FPL based its motion to enjoin arbitration were separate and distinct from the issues raised by the direct appeal."). While the Eleventh Circuit's decision on the constitutionality of Special Counsel Smith's appointment may be, as Plaintiffs argue, "central to [the] determination of whether the Final Report may be lawfully

12

released," Dkt. No. 28 at 10,[4] the inverse is not necessarily true. The Court has been presented no argument for why the Permanent Injunction would "alter the status of the case as it rests before the Court of Appeals." *Bindslev v. Silva*, No. 24-11896, 2025 WL 66745, at *2 (11th Cir. Jan. 10, 2025) (quoting *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003)). The Permanent Injunction left Judge Cannon's ruling on the Appointments Clause "unaffected." *Johnson*, 55 F.4th at 1309. Therefore, the Court is not convinced that Judge Cannon clearly lacked jurisdiction to issue the permanent injunction at the time it was issued.[5]

Critically, the Eleventh Circuit's January 9, 2025 order denying the Co-Defendants' emergency motion implied that Judge Cannon had jurisdiction to enter orders with respect to the emergency motion. 11th Cir. Docket, Dkt. No. 100; *see also* Florida Criminal Case, Dkt. No. 697 at 5 ("The Eleventh Circuit's January 9, 2025, summary denial of Defendants' similar motion for emergency injunctive relief as filed in the Eleventh Circuit contains no directive to this Court restricting its authority to adjudicate the properly filed Emergency Motion in this Court."). Rather than holding that Judge Cannon was without jurisdiction to enter the January 7, 2025 temporary injunction, it stated that the DOJ could file an appeal from that order "to the extent" that the DOJ sought "relief from [it]." 11th Cir. Docket, Dkt. No. 100. The fact that the Eleventh Circuit directed the DOJ to file a separate appeal from Judge Cannon's order suggests that the Eleventh Circuit did not itself consider the order—and by extension, issues related to enjoining the release of

---

[4] The Court takes no position on this.
[5] Plaintiffs also argue that "even if this Court were to conclude that the injunction could have been valid at some point, Judge Cannon did not have jurisdiction to enjoin conduct beyond the time when any threat to the fair-trial rights of the defendants ceased to exist." Dkt. No. 28 at 19. As discussed further below, Judge Cannon's ongoing jurisdiction over the release of Volume II is currently being litigated in the Florida Criminal Case. The proposed intervenors in the Florida Criminal Case have raised compelling arguments that the Co-Defendants' fair-trial rights, which the Permanent Injunction aimed to protect, are no longer at risk. But this Court is not in a position to determine the extent of any risk to the rights of the Co-Defendants, who notably are not parties to this action. *See Georgia v. Pres. of the U.S.*, 46 F.4th 1283, 1303 (11th Cir. 2022) ("What is the traditional scope of injunctive relief? The extent necessary to protect the interests of the parties." (internal quotation marks omitted)). As the *Am. Oversight* court held, "the Court has no reason to doubt Judge Cannon's authority to decide whether and to what extent the injunction should remain in place." *Am. Oversight*, 2025 WL 1167955, at *8.

the Final Report—to be a part of the case already on appeal.

Given that the issue of modifying or vacating the Permanent Injunction is currently before Judge Cannon in the Florida Criminal Case, a "collateral[] attack" on the injunction in this Court "cannot be permitted to do without seriously undercutting the orderly process of the law." *Celotex*, 514 U.S. at 313. Multiple parties have moved to intervene in the Florida Criminal Case for the purpose of seeking modification or recission of the Permanent Injunction. *See Lykins v. U.S. Dept. of Justice*, 725 F.2d 1455, 1461 (D.C. Cir. 1984) (stating that the "rationale" of *GTE Sylvania* is that "rules and procedures provide a fair opportunity to object to or appeal mistaken rulings, and even interested individuals who are not parties to the proceedings have the opportunity to intervene under the modern Federal Rules of Civil Procedure."); *LaRouche v. Fed. Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir. 1982) ("Where, as here, a member of the public is being foreclosed from exercising [FOIA] right[s] by an order entered pursuant to stipulation in litigation to which she is not a party, her effective remedy, perhaps her only one, is by way of intervention."). Judge Cannon will be in a position to determine "how the current posture of the criminal case and the facts affect the injunction she entered."[6] *Am. Oversight*, 2025 WL 1167955, at *8. If the prospective intervenors are "dissatisfied with [her] ultimate decision, [they] can appeal to . . . the Eleventh Circuit." *Celotex*, 514 U.S. at 313. "The Court sees no reason—described in *GTE Sylvania* or otherwise—to short-circuit the process unfolding before Judge Cannon." *Am. Oversight*, 2025 WL 1167955, at *8.

Having found that Volume II is not being improperly withheld, the Court declines to order the DOJ to take further action with respect to Plaintiffs' FOIA request. Plaintiffs assert no legal basis—other than the Court's broad equitable powers—for the Court to, as Plaintiffs demand, order

---

[6] Importantly, necessary parties are missing from this case. The Co-Defendants, whose fair trial rights are the subject of the Permanent Injunction, are not parties to this action and are not present to defend their rights with respect to the validity of the injunction. As noted in *Am. Oversight*, the Co-Defendants' absence affects whether "the doctrine of issue preclusion [would] prevent relitigation of th[e] jurisdictional [issue]," were it to be resolved in Plaintiffs' favor here. *Am. Oversight*, 2025 WL 1167955, at *9.

the DOJ to seek modification of the Permanent Injunction.  *See* Dkt. No. 28 at 20.  Plaintiffs cite no statutory authority and no apposite case law in support of its argument that the Court may direct that the DOJ take a particular position in a pending criminal case—an argument that seriously implicates the separation of powers.  Section 552(a)(4)(B) does not grant the court authority to direct the positions taken by the DOJ in criminal proceedings, only "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld."  5 U.S.C. § 552(a)(4)(B).[7]  Because the Court finds that no agency records are being improperly withheld, the Court has no basis under section 552(a)(4)(B) to take further action.  The prospective intervenors in the Florida Criminal Case are currently representing the interests of those seeking disclosure of Volume II; the Court will not order the DOJ to do so as well.

While Plaintiffs argue that the DOJ "procured th[e] injunction for the purpose of evading [] compliance," Dkt. No. 28 at 20, "it cannot be said that the [agency] manipulated th[e] court[s] in order to avoid the agency's obligations under the FOIA."  *In re Franklin Nat. Bank Securities Litig.*, 92 F.R.D. 468, 471 (E.D.N.Y. 1981), *aff'd sub nom. F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982).  To the contrary, the DOJ did oppose—in multiple courts—an injunction against releasing the Final Report.  Even though the DOJ did not object in March 2025 to Judge Cannon keeping the injunction in place, *see* Florida Criminal Case, Dkt. No. 738, that decision was ultimately Judge Cannon's to make.  *See* Permanent Injunction at 13 (stating that the order "remains in effect pending further Court order" and only requesting that the parties' "advis[e]" of their positions after the case concludes).  "The Act was intended to circumscribe the discretion of agencies rather than that of

---

[7] Plaintiff's citation to *Schoenberg v. Fed. Bureau of Investigation* is inapposite.  No. 18-cv-1738 (JAK) (AGRX), 2020 WL 4937813, at *9 (C.D. Cal. May 8, 2020), *aff'd*, 2 F.4th 1270 (9th Cir. 2021).  *Schoenberg* merely holds that in the context of a motion for attorneys' fees related to a FOIA request, the agency was not justified in failing "to consider whether to seek [the seal order's] modification in light of [p]laintiff's FOIA request" after "a material change in the circumstances that warranted [the seal order's] entry"—namely that most of the information had already become public through other means.  *Id.* at *7–9.  Not only are the circumstances of this case different, altering the DOJ's potential obligation to "consider" modification of the Permanent Injunction, but the *Schoenberg* court did not order that the government agency move to unseal the information, as Plaintiff is requesting that the Court do here.  *Id.* at *9.

15

courts." *In re Franklin*, 92 F.R.D. at 471. In any event, "[FOIA's] goal is not necessarily defeated when an agency obtains protection from a court." *Id.*

## V. LEAVE TO AMEND

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017). Because Plaintiffs have not proposed any additional allegations that would affect the Court's determination that the DOJ did not improperly deny the Request, further amendment of Plaintiffs' complaint would be futile.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is GRANTED. The Clerk of Court is directed to enter judgment for Defendant and to terminate the motion pending at Dkt. No. 23.

SO ORDERED.

Dated: September 4, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge